2:12cr707·DN

# United States District Court
## District of Utah

**D. Mark Jones**
Clerk of Court



**Louise S. York**
Chief Deputy Clerk

November 20, 2012 RECEIVED CLERK

DEC 1 7 2012

U.S. DISTRICT COURT

**FILED**

NOV 2 6 2012

CLERK'S OFFICE
U.S. DIST...

U.S. District Court, District of MI Eastern
Mr. David J. Weaver, Clerk of Court
United States Courthouse
231 West Lafayette Boulevard, Room 814
Detroit, MI 48226

RE:   United States of America vs. Christopher Grisel
      97-CR-81493-002 DT (District of MI Eastern)
      2:12-CR-00707 DN (District of Utah)

Dear Mr. Weaver:

On 11/8/12, the Honorable Ted Stewart executed the Order Accepting Jurisdiction for the above captioned defendant. I am forwarding an original order for your records. You may access our website at https://ecf.utd.uscourts.gov/

Please forward a certified copy of the final indictment to our office. I was able to access all other necessary documents from your PACER site.

Please acknowledge receipt of this letter by signing a copy and returning to my attention. If you have any questions, please advise. My telephone number is 801.524.6119.

Sincerely,
D. Mark Jones, Clerk

By: /s/Aimee Trujillo
Aimee Trujillo

cc:   U.S. Probation for Utah with copy of the order
      U.S. Attorney c/o FLU Unit
      Financial Administrator

**ACKNOWLEDGMENT OF RECEIPT:**

Received by: _____

Date: _____

6/27/98
43

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

I hereby certify that the foregoing is a true copy
of the original on file in this office.
Clerk, U.S. District Court
Eastern District of Michigan
By: _____
Deputy

UNITED STATES OF AMERICA,

        Plaintiff,

v.

D-1  ALAN MIKELL,
D-2  CHRISTOPHER GRISEL,

        Defendants.

_____/

Criminal No. 97-CR-20052-BC

## SECOND SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### COUNT 1
### (18 USC § 1956(h))

**D-1  ALAN MIKELL**
**D-2  CHRISTOPHER GRISEL**

That from a beginning date unknown to the grand jury, but no later than

approximately January 10, 1996, to on or about September 11, 1996, inclusive, in the

Eastern District of Michigan, Northern Division, and elsewhere, **ALAN MIKELL (Mikell)**

**and CHRISTOPHER GRISEL**, defendants herein, and Ronald Michael HInes (Hines),

did combine, conspire, confederate and agree with each other to conduct and attempt

to conduct financial transactions defined in Title 18, United States Code, sections

1956(a)(1)B(i).  The aforesaid defendants, knowing that the property involved in a

financial transaction represented the proceeds of some form of unlawful activity,

conspired to, and did conduct, or attempt to conduct these financial transactions with

monetary instruments which in fact involved the proceeds of specified unlawful activity,

that is, mail fraud and wire fraud, in violation of Title 18, United States Code, sections 1341 and 1343, respectively, knowing that the transaction or transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity. The overall purpose of the conspiracy was to move money in such a way as to conceal, disguise, hinder, and frustrate the efforts of legitimate creditors to obtain payment.

### The Manner, Means and Background of the Conspiracy

1.     From approximately 1936 to August, 1993, the Kraft Company owned and operated a cheese plant and related offices in Pinconning, Michigan. In July - August, 1993, Kraft sold the plant to Arthur Dore and Paul Wadzinski. The company was initially called Pinconning Cheese, Inc. It was later re-named Dore's Pinconning Cheese, Inc.

2.     In approximately October of 1994, Christopher Grisel and Mikell became the majority owners of the plant, which they eventually operated under the name of Paul's Pinconning Cheese (PPC), among others.

3.     In approximately early March of 1995, after accumulating an indebtedness of approximately $1,750,000, including approximately $1,000,000 to the National Farmers Organization Dairy Custodial Account (NFO, Inc.) for milk used in the production of cheese, PPC was closed.

4.     On or about March 7, 1995, Christopher Grisel and Mikell reopened the plant, first operating under a temporary license to acquire milk and produce cheese under the name of Earthsafe Enterprises, Inc., and then, on approximately May 2,

2

1995, under the name of Real Pinconning Cheese (RPC) and later, Real Pinconning Cheese, L.C. (commonly referred to as RPC and/or RPC, LC, hereinafter, RPC). RPC was owned by Earthsafe Enterprises, Inc. (Earthsafe), an Oklahoma corporation, which in turn was jointly owned by Innoquest, Inc., a Texas corporation, of which Christopher Grisel was President, and Mikco, Inc., an Oklahoma corporation, of which Mikell was President.

5.        On or about September 26, 1995, RPC entered into an agreement to purchase milk from NFO, Inc. Due to the aforementioned unpaid debt of approximately $1,000,000, which was still unpaid and which was owed to NFO, Inc. for previously supplied milk, NFO, Inc. agreed to ship additional milk only under certain conditions, which included a Collateral Pledge and Security Agreement whereby NFO, Inc. could hold RPC in default for failure to remain current on milk payments and whereby NFO, Inc. could claim title to cheese produced at the plant as security.

6.        By early January of 1996 however, RPC owed an additional $1,400,000, or thereabouts, to NFO, Inc., for unpaid milk invoices. At the same time, the earlier indebtedness of approximately $1,000,000 also remained. On or about January 10, 1996, NFO Inc. notified Christopher Grisel and Mikell that they were holding RPC in default and were exercising control over the collateral, i.e., approximately 771,338.9 pounds of cheese which was then warehoused at Pinconning and/or in transit.

7.        After receiving formal notification that they were being held in default, Christopher Grisel and Mikell, on January 10, 1996, quickly made arrangements to sell the cheese to Nor-Tech Dairy Advisors, Inc. (Nor-Tech, Inc.), Sioux Falls, South

3

Dakota, owned by Ronald Michael Hines (Hines). Although the cheese at the Pinconning plant was almost entirely Grade "A", and thus worth approximately $1.35 to $1.40 per pound, Christopher Grisel and Mikell sold the cheese to Nor-Tech, Inc. (Hines) for the price of 25¢ per pound. Christopher Grisel, Mikell and Hines also initiated negotiations with each other on January 10, 1996, whereby Nor-Tech, Inc. would re-sell the cheese to Innoquest, Inc. (Christopher Grisel) for 30¢ per pound plus shipping costs, and that the sale would take place quickly. On January 12, 1996, Christopher Grisel and Mikell confirmed with Hines the purchase of the cheese by Nor-Tech, Inc. with subsequent re-sale to Innoquest, Inc.

8.      Unaware that Christopher Grisel and Mikell had negotiated the 25¢ per pound sale to Hines, but aware of the planned shipment of the cheese from the Pinconning plant, NFO Inc., obtained a restraining order on or about January 14, 1996 at 11:08 a.m. to halt such shipments.

9.      On January 14, 1996, a telephone conference call was conducted involving representatives of NFO Inc., Christopher Grisel, and Mikell. During the call, Christopher Grisel and Mikell, in order to induce NFO Inc. to dismiss or modify the restraining order, falsely represented that market price (then approximately $1.35 to $1.40 per pound) was being sought for all the cheese, despite the prior price arrangement (described in paragraph 7 above).

10.      Based on the representations of Christopher Grisel and Mikell, NFO Inc. and RPC entered into a Stipulation and Order from the Bay County Circuit Court which together provided however (among other terms) that RPC would fax complete sale

4

information to NFO Inc. by January 15, 1996, showing the volume, destination, price (where known), purchaser, terms, and scheduled deliveries of the cheese.

11.   From January 14 - 18, 1996, approximately nineteen tractor-trailer loads (over 690,000 pounds) of cheese acquired by Nor-Tech, Inc. were shipped. NFO Inc. however was provided approximately 18 invoices for the cheese, each falsely stating "price to be determined upon inspection". No disclosure was made to NFO Inc. that Christopher Grisel and Mikell had already sold the cheese to Nor-Tech, Inc. (Hines) for 25¢ per pound and that the cheese had been re-sold to Innoquest, (Christopher Grisel) on January 15, 1996 for the agreed-to 30¢ per pound plus 4¢ per pound for costs. Two more loads (approximately 79,447.8 pounds) had been sold by RPC to Sorrento Cheese Company in Buffalo, N.Y. (Sorrento), for approximately $1.40 per pound. These loads were rejected by Sorrento and then also re-sold by Mikell to Nor-Tech, Inc. (Hines) for 25¢ per pound.

12.   On January 15, 1996, unbeknownst to NFO Inc., Christopher Grisel, in furtherance of the 25¢ price agreement met with Hines at the office of Nor-Tech, Inc. in Sioux Falls, South Dakota and purchased all nineteen loads of cheese totaling to approximately 691,941.1 pounds in the name of Innoquest (Christopher Grisel) for 30¢ per pound with an additional 4¢ per pound to be paid Nor-Tech, Inc. for shipping, warehouse, and other charges incurred by Nor-Tech, Inc. Christopher Grisel also informed Hines on this date that "all of the cheese will be moved within 45 days."

13.   On or about January 17, 1996, again unbeknownst to NFO Inc., approximately 40,137.1 pounds of cheese originally purchased by Nor-Tech, Inc. from

5

RPC (Christopher Grisel and Mikell) for 25¢ per pound and re-sold to Innoquest
(Christopher Grisel) for 30¢ per pound, as previously described, was re-sold to
Sorrento for approximately $1.40 per pound ($56,091.59). Payment for this cheese
was directed to Nor-Tech Dairy Advisors, Inc. (Nor-Tech, Inc.) by Sorrento in the form
of a check dated February 22, 1996.

        14.     On January 18, 1996, again without notification to or the knowledge of
NFO Inc. representatives, Innoquest, Inc. (Christopher Grisel) re-sold the eighteen
remaining loads of cheese sold to Innoquest, to E.J. Marketing (Edward Buchberger),
Marathon, Wisconsin, for an average price of approximately $1.36 per pound.
Christopher Grisel also instructed Buchberger on this date that it was planned that all
of the cheese would be moved by the end of February.

        15.     On or about January 30, 1996, Nor-Tech, Inc. (Hines) sold the two loads
of cheese rejected by Sorrento (paragraph 11 above) and purchased by Nor-Tech, Inc.
for 25¢ per pound, to MCT Dairies, Inc., Maplewood, N.J. for $1.05 per pound
(approximately $83,420.18). Hines retained approximately $30,984.63 for his costs
and split the remaining approximately $52,435.55 with Innoquest, Inc. (Christopher
Grisel) Innoquest, Inc. receiving a check from Nor-Tech, Inc. for approximately
$16,667.19, on or about May 8, 1996.

        16.     From approximately January 15, 1996 through February 21, 1996,
representatives of NFO Inc. contacted and attempted to contact Christopher Grisel,
Mikell, and Hines in efforts to determine what price was being paid for the cheese.
These inquiries by NFO Inc. were met by false statements concerning supposed quality

problems with the cheese, false statements that problems were encountered in arranging inspections, and false statements concerning confusion about where to send the money generated from sale of the cheese.

17.     On or about February 20, 1996, Hines wired $186,670.91 to Concord Growth, representing approximately 25¢ per pound x 771,138.9 pounds, less outstanding credits owed by RPC in unrelated sales, thus first informing NFO Inc. that NFO, Inc. would not receive anything remotely approaching the promised market value of approximately $1.35 to $1.40 per pound for the cheese.

18.     On two occasions in January of 1996, and on one occasion in February of 1996, Christopher Grisel instructed Buchberger to direct certain payments for the cheese to Nor-Tech, Inc. (Hines) rather than Innoquest, Inc. (Christopher Grisel). Buchberger complied, by mailing fifteen of the eighteen checks, totaling approximately $709,940.46 to Nor-Tech, Inc. Buchberger mailed the remaining three checks, totaling approximately $148,638.45 to Innoquest, Inc. (Christopher Grisel).

19.     On or about January 16, 19, and 25, 1996, and February 2, 9, and 22, 1996, Hines then transferred approximately $565,000 from Nor-Tech, Inc. to the Innoquest, Inc. Project Account set up by Christopher Grisel at the Guaranty Federal Bank in Texas. The remaining funds paid to Nor-Tech, Inc. by E.J. Marketing were retained by Nor-Tech, Inc. (Hines). The $565,000 transferred to the Innoquest, Inc. project account was then used to pay Innoquest, Inc., Earthsafe, Inc., Mikco, Inc., RPC creditors and others, but not NFO, Inc.

7

## OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, the defendants committed or caused to be committed the following overt acts in the Eastern District of Michigan, Northern Division, and elsewhere:

1.     In mid-January, 1996, Alan Mikell instructed Theresa Gwizdala via interstate phone communication, to insert the notation "Price to be determined upon inspection", on a series of invoices. Copies of some of these invoices were then faxed interstate to NFO, Inc., and elsewhere.

2.     On or about February 20, 1996, Mikell instructed Gwizdala via interstate phone communication to amend the invoices referred to in the preceding paragraph so that, as revised, they would each bear the notation 25¢ per pound. These amended (25¢ ) invoices were not obtained by NFO, Inc. until approximately March 11, 1996.

3.     On or about January 15, 1996, Christopher Grisel traveled from Dallas, Texas to Sioux Falls, South Dakota, for the purpose of meeting with co-defendant Hines.

4.     On or about January 25, 1996, February 1, 1996, and February 8, 1996, Christopher Grisel instructed Edward Buchberger of E.J. Marketing, Inc., to direct a majority of the payment for cheese he had purchased from Innoquest, Inc. to Nor-Tech, Inc. (Hines).

5.     On or about January 16, 19, and 25, 1996 and February 1, 9, and 22, 1996, Hines sent instructions, via facsimile communication, to a local bank in Sioux Falls, South Dakota. The instructions brought about the transfer by wire of funds from

8

Nor-Tech, Inc. to Innoquest, Inc. (Christopher Grisel) in Texas.

6.     During a telephone conference call on or about January 14, 1996, Mikell and Christopher Grisel represented to Dennis Tonak and other representatives of NFO, Inc. that market price would or was being sought for the cheese.

7.     On or about February 12, 1996, Mikell sent a facsimile communication from Tulsa, Oklahoma to Hines in Sioux Falls, South Dakota regarding payment for the cheese and claiming legal issues prevented Mikell from instructing Hines as to where to send payment.

8.     On or about January 15, 1996, Mikell sent by facsimile communication from Oklahoma to Dennis Tonak of NFO, Inc. in Ohio, an Estimated Shipping Schedule for the cheese.  The schedule represented that the price for cheese being sold to Nor-Tech, Inc. was "to be determined".

9.     On or about January 15, 1996, Mikell sent a letter by facsimile transmission from Oklahoma to the Concord Growth Corporation in California, advising Concord that RPC no longer disputed milk bills that had been presented for payment by NFO, Inc.

10.    On or about January 15, 1996, Mikell also transmitted the same letter referred to in the preceding paragraph via facsimile from Oklahoma to NFO, Inc. in Ohio.

Contrary to Title 18, United States Code, section 1956(h).

9

## COUNTS 2 - 5
### (18 USC § 1343 and 18 USC § 2)

**D-1 ALAN MIKELL**
**D-2 CHRISTOPHER GRISEL**

On or about the individual dates set forth below, in the Eastern District of Michigan, Northern Division, and elsewhere, **ALAN MIKELL and CHRISTOPHER GRISEL**, defendants herein, having devised, and intending to devise a scheme and artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting to do so, did transmit, or cause to be transmitted, and did aid and abet one another in causing to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds.

### The Manner and Means of the Scheme and Artifice to Defraud

A.      Paragraphs 1 through 19, inclusive, and the list of overt acts set forth in Count 1 of this indictment are re-alleged and re-stated, as if fully set forth herein.

B.      In approximately mid-January of 1996, Alan Mikell telephoned Theresa Gwizdala, office manager for RPC, from his office in Oklahoma to her office in Pinconning, Michigan. Mikell instructed Gwizdala to prepare invoices relating to the cheese with the notation "price to be determined upon inspection", even though he well knew that he had already arranged a price of 25¢ per pound with defendant Hines.

C.      In furtherance of the scheme and artifice to defraud, and upon

10

Mikell's directions, copies of the invoices in the individual counts set forth below bearing the false notation of "price to be determined upon inspection" were then sent by Gwizdala via facsimile from Pinconning, Michigan to defendant Michael Hines in Sioux Falls, South Dakota. Certain of these invoices were also sent via facsimile transmission by Gwizdala to NFO, Inc. in Ohio, and to defendant Christopher Grisel:

| COUNT | DATE | INVOICE #'s |
|-------|------|-------------|
| 2 | 01/16/96 | 1200 - 1210 |
| 3 | 01/17/96 | 1211 - 1216 |
| 4 | 02/01/96 | 1227 - 1228 |
| 5 | 02/08/96 | 1221 |

Each individual instance in violation of Title 18, United States Code, section 1343, and Title 18, United States Code, section 2.

### COUNT 6
### (18 USC § 1343 and 18 USC § 2)

D-1    ALAN MIKELL
D-2    CHRISTOPHER GRISEL

On or about January 14, 1996, in the Eastern District of Michigan, Northern Division, and elsewhere, **ALAN MIKELL and CHRISTOPHER GRISEL**, defendants herein, having devised and having intended to devised a scheme and artifice to defraud, and for obtaining property and money by means of false and fraudulent pretenses, representations, and promises, did each engage in a telephone conference call, and did thereby cause to be transmitted, and did aid and abet one another in the transmission, by means of wire communications in interstate commerce, various signals

11

or sounds to be transmitted, for the purpose of executing such scheme or artifice to defraud.

### The Manner and Means of the Scheme and Artifice to Defraud

Paragraphs 1 through 19, inclusive, the list of overt acts set forth in Count 1 of this indictment, and the factual allegations contained in Counts 2 through 5, of this indictment are re-alleged and re-stated as if fully set forth herein.

On or about January 14, 1996, during a telephone conference call with representatives of NFO, Inc., located in Ohio and Michigan, Mikell, speaking from Oklahoma, and Christopher Grisel, speaking from Texas, repeatedly told the NFO, Inc. representatives that market price was being sought for the cheese. In truth and fact, as Mikell and Christopher Grisel then well knew, they (Christopher Grisel and Mikell), had already begun arrangements on or about January 10, 1996 and finalized by January 12, 1996, an agreement to sell the cheese to co-defendant Hines for the artificially low and contrived price of 25¢ per pound. The aforesaid false representations concerning market price being knowingly made in order to induce NFO, Inc. to allow shipment of the cheese, all in furtherance of the scheme and artifice to defraud, in violation of Title 18, United States Code, section 1343 and Title 18, United States Code, section 2.

### COUNT 7
### (18 USC §§ 1343)

**D-1   ALAN MIKELL**

On or about February 20, 1996, in the Eastern District of Michigan, Northern Division, **ALAN MIKELL**, defendant herein, having devised, and intending to devise a

12

scheme and artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting to do so, did transmit, or cause to be transmitted, by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds.

### The Manner and Means of the Scheme and Artifice to Defraud

A.    Paragraphs 1 through 19, inclusive, the list of overt acts set forth in Count 1 of this indictment, and the factual allegations contained in Counts 2 through 6 of this indictment are re-alleged and re-stated as if fully set forth herein.

B.    On or about February 20, 1996, Alan Mikell telephoned Theresa Gwizdala from his office in Oklahoma to her office in Pinconning, Michigan. He instructed her to amend invoices 1199 through 1216, 1221, 1227, and 1228, which had at his direction carried the notation "price to be determined upon inspection", deleting that notation, and substituting therefor on each invoice, a price of 25¢ per pound.

C.    In furtherance of the scheme and artifice to defraud, and upon Mikell's direction, copies of the new invoices set forth below, each bearing the notation 25¢ per pound, were sent by Gwizdala via facsimile from Pinconning, Michigan to defendant Hines in Sioux Falls, South Dakota, on or about February 20, 1996:

**INVOICE #**

1199
1200
1201
1202
1203

13

1204
1205
1206
1207
1208
1209
1210
1211
1212
1213
1214
1215
1216
1221
1227
1228

In violation of Title 18, United States Code, section 1343.

### COUNT 8
### (18 USC § 1343)

**D-1   ALAN MIKELL**

On or about January 15, 1996, in the Eastern District of Michigan, Northern

Division, and elsewhere, **ALAN MIKELL,** defendant herein, having devised and having

intended to devise a scheme and artifice to defraud, and for obtaining property and

money by means of false and fraudulent pretenses, representations, and promises, did

transmit and cause to be transmitted by means of wire communications in interstate

commerce, various writings, signs, signals, pictures, or sounds, for the purpose of

executing a scheme and artifice to defraud.

### The Manner and Means of the Scheme and Artifice to Defraud

Paragraphs 1 through 19, inclusive, and the list of overt acts set forth in

Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7

14

of this indictment are re-alleged and re-stated as if fully set forth herein.

On or about January 15, 1996, Mikell transmitted by facsimile communication, or caused to be transmitted by facsimile from Oklahoma, an "estimated shipping schedule" to Dennis Tonak in Ohio. The estimated shipping schedule stated that eleven loads of cheese were being sold to Nor-Tech, Inc. and that the price was "to be determined". In truth and fact, as the defendant Alan Mikell then well knew, a price of 25¢ per pound had already been determined for the cheese by no later than January 12, 1996; the aforesaid facsimile communication being issued in furtherance of the scheme and artifice to defraud, all in violation of Title 18, United States Code, section 1343.

## COUNT 9
## (18 USC § 1343)

### D-2    CHRISTOPHER GRISEL

On or about January 15 through 19, 1996, inclusive, in the Eastern District of Michigan, Northern Division, and elsewhere, **CHRISTOPHER GRISEL,** defendant herein, having devised and having intended to devise a scheme and artifice to defraud, and for obtaining property and money by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate commerce, various writings, signs, signals, pictures, or sounds, for the purpose of executing a scheme and artifice to defraud.

### The Manner and Means of the Scheme and Artifice to Defraud

Paragraphs 1 through 19, inclusive, and the list of overt acts set forth in

15

Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7 of this indictment are re-alleged and re-stated as if fully set forth herein.

On or about January 15 through 19, 1996, inclusive, Dennis Tonak of NFO, Inc., spoke by telephone from Ohio to defendant Christopher Grisel who was then either in Texas or South Dakota. During this telephone conversation, Christopher Grisel informed Tonak that there was a quality problem or problems with the cheese and that until these problems could be sorted out, they would not know the price being paid for the cheese, or words to that effect. In truth and fact, as defendant Christopher Grisel then well knew, the 25¢ per pound price of the cheese sold to Nor-Tech, Inc. had already been agreed upon no later than January 12, 1996. Furthermore, by on or about January 15 through 19, 1996, inclusive, the approximate date of this telephone conversation, Christopher Grisel had already re-purchased the cheese from Nor-Tech, Inc. in the name of Innoquest for a price of approximately 30¢ per pound; all in furtherance of the scheme and artifice to defraud, in violation of Title 18, United States Code, section 1343.

## COUNT 10
### (18 USC § 1343)

**D-2   CHRISTOPHER GRISEL**

On or about January 16 through 17, 1996, inclusive, in the Eastern District of Michigan, Northern Division, and elsewhere, **CHRISTOPHER GRISEL,** defendant herein, having devised and having intended to devise a scheme and artifice to defraud, and for obtaining property and money by means of false and fraudulent pretenses,

16

representations, and promises, did transmit and cause to be transmitted by means of

wire communications in interstate commerce, various writings, signs, signals, pictures,

or sounds, for the purpose of executing a scheme and artifice to defraud.

### The Manner and Means of the Scheme and Artifice to Defraud

Paragraphs 1 through 19, inclusive, and the list of overt acts set forth in

Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7

of this indictment are re-alleged and re-stated as if fully set forth herein.

On or about January 16 through 17, 1996, inclusive, Christopher Grisel,

defendant herein, who was then in Texas, and Edward Buchberger, who was then in

Wisconsin, communicated via telephone. Christopher Grisel offered and Buchberger

finalized an agreement to purchase eighteen loads of cheese for a price of 2¢ per

pound under the customer price to be obtained by Buchberger. The market price at

that time, for cheese that RPC had sold to Nor-Tech, Inc. for approximately 25¢ per

pound, and that had been re-purchased by Innoquest, Inc. for 30¢ per pound, was then

$1.38 per pound, or thereabouts, the wire communication with Buchberger being in

furtherance of the scheme and artifice to defraud, all in violation of Title 18, United

States Code, section 1343.

### COUNT 11
### (18 USC § 1341) or (18 USC § 1343)

**D-2   CHRISTOPHER GRISEL**

On or about January 18, 1996, in the Eastern District of Michigan, Northern

Division, and elsewhere, **CHRISTOPHER GRISEL,** defendant herein, having devised

and intending to devise a scheme or artifice to defraud, and for obtaining money or

property by means of false and fraudulent pretenses, representations, or promises, for

the purpose of executing such scheme or artifice or attempting to do so, did cause to

be deposited in any post office or authorized depository for mail matter, any matter or

thing whatever to be sent or delivered by the Postal Service, or knowingly caused to be

delivered by mail according to the direction thereon, or at the place at which it was

directed to be delivered by the person to whom it is addressed any such matter or

thing, or in the alternative, did, and in furtherance of the scheme or artifice to defraud,

did transmit and cause to be transmitted by means of wire communication in interstate

commerce, various writings, signs, signals, pictures, or sounds.

### The Manner and Means of the Scheme and Artifice to Defraud

Paragraphs 1 through 19, inclusive, the list of overt acts set forth in Count

1 of this indictment, and the factual allegations contained in Counts 2 through 7 of this

indictment are re-alleged and re-stated as if fully set forth herein.

On or about January 18, 1996, Christopher Grisel, defendant herein,

transmitted or caused to be transmitted via the U.S. Postal Service, and/or via facsimile

transmission, a letter to Edward Buchberger, E.J. Marketing, Inc., Marathon,

Wisconsin, confirming that Innoquest, Inc. was selling eighteen loads of cheese to

Buchberger for a price approximately 2¢ per pound under the customer price obtained

by Buchberger. The letter also stated that all cheese was to be moved by the end of

February, 1996. By so stating, as the defendant Christopher Grisel then well knew,

movement of the cheese by the end of February to other purchasers and locations

18

would render it more difficult for NFO, Inc. to trace the physical location of the cheese, thus frustrating NFO, Inc.'s efforts to receive fair market value therefor, in violation of Title 18, United States Code, section 1341 or Title 18, United States Code, section 1343.

### COUNT 12
### (18 USC § 1343)

**D-2   CHRISTOPHER GRISEL**

On or about January 24, 1996, in the Eastern District of Michigan, Northern Division, and elsewhere, **CHRISTOPHER GRISEL,** defendant herein, having devised and having intended to devise a scheme and artifice to defraud, and for obtaining property and money by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate commerce, various writings, signs, signals, pictures, or sounds, for the purpose of executing a scheme and artifice to defraud.

#### The Manner and Means of the Scheme and Artifice to Defraud

Paragraphs 1 through 19, inclusive, and the list of overt acts set forth in Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7 of this indictment are re-alleged and re-stated as if fully set forth herein.

On or about January 24, 1996, Dennis Tonak of NFO, Inc., spoke by telephone from Ohio, to defendant Christopher Grisel in Texas. During this telephone conversation, Grisel informed Tonak that they were still in the process of examining the cheese, and that no price had been determined, or words to that effect. In truth and

19

fact, as defendant Christopher Grisel then well knew, the sale of the cheese to Nor-Tech, Inc. for a price of 25¢ per pound had already been agreed upon no later than January 12, 1996. Furthermore, by January 24, 1996, the approximate date of this telephone conversation, Christopher Grisel had already re-purchased the cheese from Nor-Tech, Inc. in the name of Innoquest, and then re-sold this same cheese to E.J. Marketing on or about January 18, 1996 for a price of approximately $1.36 per pound; all in violation of Title 18, United States Code, section 1343.

**COUNT 13**
**(18 USC § 1343 and 18 USC § 2)**

**D-2   CHRISTOPHER GRISEL**

On or about January 25, 1996, in the Eastern District of Michigan, Northern Division, and elsewhere, **CHRISTOPHER GRISEL**, defendant herein, and Ronald Michael Hines, having devised and having intended to devise a scheme and artifice to defraud, and for obtaining property and money by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted, and did aid and abet each other in the transmission by means of wire communications in interstate commerce, various writings, signs, signals, pictures, or sounds, for the purpose of executing a scheme and artifice to defraud.

**The Manner and Means of the Scheme and Artifice to Defraud**

Paragraphs 1 through 19, inclusive, and the list of overt acts set forth in Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7 of this indictment are re-alleged and re-stated as if fully set forth herein.

20

On or about January 25, 1996, Christopher Grisel, defendant herein, sent or caused to be sent via a facsimile communication (consisting of approximately nine pages) from Texas to defendant Hines in South Dakota, a letter containing instructions whereby Edward Buchberger would forward funds due to Innoquest, Inc., for the cheese sold to E.J. Marketing, to Nor-Tech, Inc. instead.  In accordance with these and other instructions, and in order to continue the scheme and artifice to defraud by concealing the majority of the funds through the use of the Nor-Tech, Inc. account, Buchberger, as directed, subsequently forwarded the bulk of the payments due to Innoquest, Inc., to Nor-Tech, Inc. instead; all in violation of Title 18, United States Code, section 1343 and Title 18, United States Code, section 2.

## COUNT 14
### (18 USC § 1343)

**D-2   CHRISTOPHER GRISEL**

On or about January 25 - February 5, 1996, inclusive, in the Eastern District of Michigan, Northern Division, and elsewhere, **CHRISTOPHER GRISEL,** defendant herein, having devised and having intended to devise a scheme and artifice to defraud, and for obtaining property and money by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate commerce, various writings, signs, signals, pictures, or sounds, for the purpose of executing a scheme and artifice to defraud.

### The Manner and Means of the Scheme and Artifice to Defraud

Paragraphs 1 through 19, inclusive, and the list of overt acts set forth in

21

Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7 of this indictment are re-alleged and re-stated as if fully set forth herein.

During the aforementioned time period, or thereabouts, Vincent Narez of Concord Growth Corp. in California, communicated by telephone with Christopher Grisel, who was then in Texas. During the conversation, Narez sought details and information pertaining to the price being obtained for the cheese being sold to Nor-Tech, Inc. Christopher Grisel, defendant herein, informed Narez that the price had not yet been determined, or words to that effect. In doing so, Christopher Grisel made reference to problems being experienced with setting the price and also referred to grading and quality problems. In truth and fact, as defendant Christopher Grisel then well knew, a price of 25¢ per pound had previously been arranged between Grisel, Mikell, and Hines. Subsequent resale of the bulk of the cheese from Nor-Tech, Inc. to Innoquest for 30¢ per pound and then yet another sale from Innoquest, Inc. to E.J. Marketing, the latter sale for close to market value, had already taken place long before the telephone conversation between Narez and Christopher Grisel. Furthermore, as the defendant Christopher Grisel then well knew, there were no grading or quality problems of any significance with respect to the cheese; all in furtherance of the scheme and artifice to defraud, in violation of Title 18, United States Code, section 1343.

22

COUNTS 15 - 20
**(18 USC § 1956(a)(1)(A)(i) and 18 USC § 2)**

**D-2    CHRISTOPHER GRISEL**

On or about the individual dates set forth below, in the Eastern District of
Michigan, Northern Division, and elsewhere, **CHRISTOPHER GRISEL**, defendant
herein, and Ronald Michael Hines, knowing that the property involved in a financial
transaction represented the proceeds of some form of unlawful activity, conducted or
attempted to conduct, and aided and abetted each other in conducting or attempting to
conduct, financial transactions which in fact involved the proceeds of specified unlawful
activity with the intent to promote the carrying on of specified unlawful activity.

**The Manner and Means of the Scheme to Engage in Money Laundering**

Paragraphs 1 through 19, inclusive, the list of overt acts set forth in Count
1 of this indictment, and the factual allegations contained in Counts 2 through 7 of this
indictment are re-alleged and re-stated as if fully set forth herein.

Following his (Hines's) receipt from E.J. Marketing, Inc. (Edward
Buchberger) of the proceeds from cheese sold by Innoquest, Inc. to E.J. Marketing, and
at the request of Christopher Grisel, Hines wire transferred or caused to be wire
transferred, from Nor-Tech, Inc., to Innoquest, Inc., a total of approximately $565,000.
The aforesaid wire transfers were made on or about the individual dates set forth
below:

| Count | Date of Wire Transfer | Amount of Wire Transfer | Description |
|-------|----------------------|-------------------------|-------------|
| 15    | 01/16/96             | $50,000.00              | From Nor-Tech to Innoquest |

23

| 16 | 01/19/96 | $25,000.00 | From Nor-Tech to Innoquest |
| 17 | 01/25/96 | $90,000.00 | From Nor-Tech to Innoquest |
| 18 | 02/02/96 | $150,000.00 | From Nor-Tech to Innoquest |
| 19 | 02/09/96 | $100,000.00 | From Nor-Tech to Innoquest |
| 20 | 02/22/96 | $150,000.00 | From Nor-Tech to Innoquest |

Each individual instance constituting a separate count of this indictment, all with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, section 1956(a)(1)(A)(i), and Title 18, United States Code, section 2.

## COUNT 21
## (18 USC § 1343 and 18 USC § 2)

**D-1    ALAN MIKELL**
**D-2    CHRISTOPHER GRISEL**

On or about January 26, 1996, in the Eastern District of Michigan, Northern Division, and elsewhere, **ALAN MIKELL and CHRISTOPHER GRISEL**, defendants herein, and Ronald Michael HInes defendants herein, having devised and having intended to devise a scheme and artifice to defraud, and for obtaining property and money by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted, and did aid and abet each other in transmitting, by means of wire communications in interstate commerce, various writings, signs, signals, pictures, or sounds, for the purpose of executing a scheme and artifice to defraud.

24

### The Manner and Means of the Scheme and Artifice to Defraud

Paragraphs 1 through 19, inclusive, and the list of overt acts set forth in Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7 of this indictment are re-alleged and re-stated as if fully set forth herein.

On or about January 26, 1996, defendants Hines, then in South Dakota, and Christopher Grisel, then in Texas, were involved in a telephone call wherein Hines expressed to Christopher Grisel that he was being pressed for information concerning the purchase of the cheese from RPC and the whereabouts of any proceeds from the sale of that cheese. Christopher Grisel dictated language to Hines over the telephone, advised Hines to incorporate the language into a letter, and to then send the letter to defendant Alan Mikell.

On or about January 26, 1996, Hines complied, sending by facsimile from his office in South Dakota to Mikell in Oklahoma, a letter which falsely stated that "there seems to be some confusion as to where payment is to go for the cheese coming from Pinconning." All in furtherance of the scheme and artifice to defraud, contrary to Title 18, United States Code, section 1343, and Title 18, United States Code, section 2.

### COUNT 22
### (18 USC § 1343)

**D-2    CHRISTOPHER GRISEL**

On or about January 30, 1996, in the Eastern District of Michigan, Northern Division, and elsewhere, **CHRISTOPHER GRISEL** defendant herein, having devised and having intended to devise a scheme and artifice to defraud, and for obtaining

25

property and money by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate commerce, various writings, signs, signals, pictures, or sounds, for the purpose of executing a scheme and artifice to defraud.

### The Manner and Means of the Scheme and Artifice to Defraud

Paragraphs 1 through 19, inclusive, and the list of overt acts set forth in Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7 of this indictment are re-alleged and re-stated as if fully set forth herein.

On or about January 30, 1996, Dennis Tonak spoke by telephone from either Ohio or Michigan to Christopher Grisel, who was then in Texas. Tonak telephoned Christopher Grisel to inquire as to the price being obtained for the cheese that had been sold to Nor-Tech, Inc. Christopher Grisel informed Tonak that he, Grisel, was no longer associated with RPC and that it would therefore be inappropriate for him to comment on RPC business, or words to that effect. During this conversation, Grisel did not supply Tonak with a price for the cheese sold to Nor-Tech, Inc., a price which he then knew to be approximately 25¢ per pound. In truth and fact, as the defendant Christopher Grisel then well knew, he (Grisel) had not severed his relationship with RPC as of January 30, 1996, and in fact continued to conduct RPC business after that date, the aforesaid misrepresentations by Christopher Grisel being made in order to conceal the true facts and to delay NFO, Inc. from determining the true price obtained for the cheese, all in furtherance of the scheme and artifice to defraud, in violation of Title 18, United States Code, section 1343.

26

27

COUNT 23
(18 USC § 1343)

**D-2   CHRISTOPHER GRISEL**

On or about February 1, 1996, in the Eastern District of Michigan, Northern

Division, and elsewhere, **CHRISTOPHER GRISEL,** defendant herein, having devised

and having intended to devise a scheme and artifice to defraud, and for obtaining

property and money by means of false and fraudulent pretenses, representations, and

promises, did transmit and cause to be transmitted by means of wire communications in

interstate commerce, various writings, signs, signals, pictures, or sounds, for the

purpose of executing a scheme and artifice to defraud.

**The Manner and Means of the Scheme and Artifice to Defraud**

Paragraphs 1 through 19, inclusive, and the list of overt acts set forth in

Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7

of this indictment are re-alleged and re-stated as if fully set forth herein.

On or about February 1, 1996, Christopher Grisel, defendant herein,

transmitted or caused to be transmitted from Texas, to Hines in South Dakota, a

facsimile communication describing the payments being directed to Nor-Tech, Inc., but

actually due and owing to Innoquest, Inc. for cheese sold by Innoquest, Inc., to E.J.

Marketing (Buchberger).  This same facsimile communication (consisting of

approximately seven pages) also discussed the wire transfer of $150,000 from Nor-

Tech, Inc. to Innoquest, and other related matters.  In accordance with the instructions

contained in this facsimile communication, and other instructions conveyed to Hines

28

and subsequently passed on to Buchberger, E.J. Marketing forwarded the bulk of the

proceeds due and owing Innoquest, Inc., to Nor-Tech, Inc. in the form of checks, with

Nor-Tech, Inc. then transferring the money to Innoquest, Inc. via wire transfer; all in

furtherance of the scheme and artifice to defraud, in violation of Title 18, United States

Code, section 1343.

### COUNT 24
### (18 USC § 1343)

**D-2   CHRISTOPHER GRISEL**

On or about February 8, 1996, in the Eastern District of Michigan, Northern

Division, and elsewhere, **CHRISTOPHER GRISEL,** defendant herein, having devised

and having intended to devise a scheme and artifice to defraud, and for obtaining

property and money by means of false and fraudulent pretenses, representations, and

promises, did transmit and cause to be transmitted by means of wire communications in

interstate commerce, various writings, signs, signals, pictures, or sounds, for the

purpose of executing a scheme and artifice to defraud.

#### The Manner and Means of the Scheme and Artifice to Defraud

Paragraphs 1 through 19, inclusive, and the list of overt acts set forth in

Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7

of this indictment are re-alleged and re-stated as if fully set forth herein.

On or about February 8, 1996, Christopher Grisel, defendant herein,

transmitted or caused to be transmitted from Texas, Edward Buchberger in Wisconsin,

a facsimile communication describing the payments being directed to Nor-Tech, Inc.,

29

but actually due and owing to Innoquest, Inc. for cheese sold by Innoquest to E.J.

Marketing (Buchberger). In accordance with the instructions contained in this facsimile

communication, and other instructions conveyed to Buchberger, E.J. Marketing

forwarded the bulk of the proceeds due and owing Innoquest, Inc., to Nor-Tech, Inc. in

the form of checks, with Nor-Tech, Inc. then transferring the money to Innoquest, Inc.

via wire transfer; all in furtherance of the scheme and artifice to defraud, in violation of

Title 18, United States Code, section 1343.

**COUNT 25**
**(18 USC § 1343)**

**D-1   ALAN MIKELL**

On or about February 10, 1996, inclusive, in the Eastern District of Michigan,

Northern Division, and elsewhere, **ALAN MIKELL,** defendant herein, having devised

and having intended to devise a scheme and artifice to defraud, and for obtaining

property and money by means of false and fraudulent pretenses, representations, and

promises, did transmit and cause to be transmitted by means of wire communications in

interstate commerce, various writings, signs, signals, pictures, or sounds, for the

purpose of executing a scheme and artifice to defraud.

**The Manner and Means of the Scheme and Artifice to Defraud**

Paragraphs 1 through 19, inclusive, and the list of overt acts set forth in

Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7

of this indictment are re-alleged and re-stated as if fully set forth herein.

On or about February 10, 1996, Dennis Tonak of NFO, Inc., while in Ohio,

30

spoke by telephone with defendant Mikell, who was then in Oklahoma.  Tonak inquired

of Mikell as to the price established for the cheese sold to Nor-Tech.  Mikell responded

that "it was all getting worked out and would be resolved shortly", or words to that

effect.  Mikell, although then knowing full well the true price, did not divulge the price to

Tonak.  In truth and fact, as defendant Mikell then well knew, a price of 25¢ per pound

had already been determined between he and Hines on or about January 10, 1996; all

in furtherance of the scheme and artifice to defraud, contrary to Title 18, United States

Code, section 1343.

### COUNT 26
### (18 USC § 1343 and 18 USC § 2)

## D-1   ALAN MIKELL

On or about February 12, 1996, in the Eastern District of Michigan, Northern

Division, and elsewhere, **ALAN MIKELL**, defendant herein, and Ronald Michael Hines

having devised and having intended to devise a scheme and artifice to defraud, and for

obtaining property and money by means of false and fraudulent pretenses,

representations, and promises, did transmit and cause to be transmitted, and did aid

and abet each other in transmitting, by means of wire communications in interstate

commerce, various writings, signs, signals, pictures, or sounds, for the purpose of

executing a scheme and artifice to defraud.

### The Manner and Means of the Scheme and Artifice to Defraud

Paragraphs 1 through 19, inclusive, and the list of overt acts set forth in

Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7

31

of this indictment are re-alleged and re-stated as if fully set forth herein.

On or about February 12, 1996, Mikell sent, via facsimile from Oklahoma to defendant Hines in South Dakota, a letter which falsely stated that Mikell did not then have definite information as to how or where payment should be directed for any of the cheese, or words to that effect, all in furtherance of the scheme and artifice to defraud, contrary to Title 18, United States Code, sections 1343, and Title 18, United States Code, section 2.

## COUNT 27
### (18 USC § 1956(a)(1)(A)(i) and 18 USC § 2)

**D-1   ALAN MIKELL**
**D-2   CHRISTOPHER GRISEL**

That on or about February 20, 1996, in the Eastern District of Michigan, Northern Division, and elsewhere, **ALAN MIKELL and CHRISTOPHER GRISEL**, defendants herein, and Ronald Michael Hines, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, conducted or attempted to conduct, and did aid and abet each other in conducting or attempting to conduct, such a financial transaction which in fact involved the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity.

### The Manner and Means of the Scheme to Engage in Money Laundering

Paragraphs 1 through 19, inclusive, the list of overt acts set forth in Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7 of this indictment are re-alleged and re-stated as if fully set forth herein.

On or about February 20, 1996, after repeatedly misleading

32

representatives of NFO, Inc., and others as to the price that had been obtained for the cheese, and having taken steps to move the cheese and hide proceeds derived therefrom in order to frustrate efforts to determine the true price that had been obtained, Mikell, Christopher Grisel, and Hines, tendered and caused to be tendered to Concord Growth on behalf of NFO, Inc., a wire transfer in purported payment for the cheese of approximately $186,670.91; in order to further promote the carrying on of mail and wire fraud, all in violation of Title 18, United States Code, section 1956(a)(1)(A)(i), and Title 18, United States Code, section 2.

### COUNT 28
### (18 USC § 1956(a)(1)(B)(i))

**D-2   CHRISTOPHER GRISEL**

On or about April 4 - 22, 1996, inclusive, in the Eastern District of Michigan, Northern Division, and elsewhere, **CHRISTOPHER GRISEL**, defendant herein, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, conducted or attempted to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

### The Manner and Means of the Scheme to Engage in Money Laundering

A.      Paragraphs 1 through 19, inclusive, and the list of overt acts set forth in Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7 of this indictment are re-alleged and re-stated as if fully set forth herein.

33

B.      During early April of 1996, NFO, Inc. representatives, seeking collection, pressed Christopher Grisel and Hines for further information and details concerning the January - February, 1996 cheese transaction.

C.      On or about April 4, 1996, Christopher Grisel withdrew or caused to be withdrawn approximately $62,503 from the Innoquest, Inc. Project Account and used the proceeds to purchase an official check of Guaranty Federal Bank for $62,500. The $62,503 withdrawal, together with other banking activity on April 4, 1996, brought the balance in the Innoquest, Inc. Project Account down from approximately $97,682.33 to approximately $7,168.07.

D.      On or about April 22, 1996, Christopher Grisel re-deposited the aforesaid $62,500 check into the Innoquest, Inc. Operating Account.

E.      The removal of the funds from the Project Account and the holding of the $62,500 in the form of an official bank check, and the resulting reduction of the Project Account balance down to only $7,168.07, or thereabouts, timed as it was, was done with the intent to conceal or disguise the nature, location, the source, the ownership, or the control of the proceeds of specified unlawful activity, all in violation of Title 18, United States Code, section 1956(a)(1)(B)(i).

## COUNT 29
### (18 USC 1956 § (a)(1)(A)(i) and 18 USC § 2)

**D-2   CHRISTOPHER GRISEL**

On or about May 5, 1996, in the Eastern District of Michigan, Northern Division, and elsewhere, **CHRISTOPHER GRISEL**, defendant herein, and Ronald Michael

Hines, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, conducted or attempted to conduct, and aided and abetted each other in conducting or attempting to conduct, a financial transaction which in fact involved the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity.

### The Manner and Means of the Scheme to Engage in Money Laundering

A. Paragraphs 1 through 19, inclusive, the list of overt acts set forth in Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7 of this indictment are re-alleged and re-stated as if fully set forth herein.

B. Two of the loads of cheese initially sold by Nor-Tech, Inc. (Hines) to Sorrento Cheese Company (Sorrento) were rejected by Sorrento because of the quality standards and specific tolerances for cheese required by Sorrento. These two loads were returned to RPC by Sorrento.

C. Subsequently, these two loads of cheese were sold by RPC (Mikell) to Nor-Tech, Inc. (Hines) for approximately 25¢ per pound. This cheese was then re-sold by Nor-Tech, Inc. to MCT Dairies, Inc., Maplewood, New Jersey, for approximately $1.00 per pound, generating sale proceeds of approximately $83,420.18. Nor-Tech, Inc. (Hines) retained $66,752.99. The balance of approximately $16,667.19 was remitted by Nor-Tech, Inc. to Innoquest, Inc. (Christopher Grisel).

D. All of the aforesaid conduct was carried out with the intent to promote the carrying on of specified unlawful activity; contrary to Title 18, United States Code, section 1956(a)(1)(A)(i) and Title 18, United States Code, section 2.

35

### COUNTS 30 - 35
### (18 USC § 1341 and 18 USC § 2)

**D-1   ALAN MIKELL**
**D-2   CHRISTOPHER GRISEL**

On or about the individual dates listed below, in the Eastern District of Michigan, Northern Division, and elsewhere, **ALAN MIKELL and CHRISTOPHER GRISEL,** defendants herein, having devised and intending to devise a scheme or artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting to do so, did cause to be deposited, and did aid and abet each other in depositing in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or knowingly caused to be delivered by mail according to the direction thereon, or at the place at which it was directed to be delivered by the person to whom it is addressed any such matter or thing, to-wit:  a series of checks totaling $75,520.20, or thereabouts.

### The Manner and Means of the Scheme and Artifice to Defraud

A.     Paragraphs 1 through 19, inclusive, the list of overt acts set forth in Count 1 of this indictment, and the factual allegations contained in Counts 2 through 7 of this indictment are re-alleged and re-stated as if fully set forth herein.

B.     On or about late June or early July, 1994, Walter Hacker (Hacker) invested $750,000 with Alan Mikell and Christopher Grisel to complete a disposal well on the premises of the Pinconning cheese plant.  Mikell and Christopher Grisel led Hacker to believe that in the event the well was sold or liquidated, funds generated by

36

such sale or liquidation would be first used to pay him (Hacker), and that after Hacker was paid in full, any fund balance would be paid to Earthsafe. Furthermore, Hacker was given to understand by Mikell and Christopher Grisel that if the sale or liquidation amount was less than the amount owed to Hacker, he (Hacker) would have certain options with respect to the remaining balance.

C.     From on or about July 1, 1995, to approximately February 15, 1996, Hacker made repeated inquiries to Mikell and Christopher Grisel concerning slow payment on the monthly amount due him. Despite these inquiries, and despite Hacker's secured interest in ownership of the disposal well, neither Mikell nor Christopher Grisel informed Hacker that they (Mikell and Christopher Grisel) had sold the well on or about March 6, 1995. Hacker in fact only learned of the sale of the disposal well on or about February 15, 1996 from another source.

D.     As a further part of the scheme and artifice to defraud, and in order to lull and induce Hacker into the continuing belief that there had been no change in the ownership of the well, Mikell and Christopher Grisel mailed or caused to be mailed to Hacker, interest checks generated by Hacker's initial investment after the sale on March 6, 1995, each such mailing constituting a separate count of this indictment:

| Count | Date (on or about) | Payor | Check Amt. (approx.) |
|-------|--------------------|-------|----------------------|
| 30    | 03/15/95           | Pinwood   | $10,000          |
| 31    | 04/27/95           | Earthsafe | $10,000          |
| 32    | 05/30/95           | Earthsafe | $10,000          |

37

| Count | Date (on or about) | Payor | Check Amt. (approx.) |
|-------|-------------------|-------|----------------------|
| 33 | 06/28/95 | Earthsafe | $10,000 |
| 34 | 08/11/95 | Earthsafe | $10,000 |
| 35 | 02/05/96 | Guaranty Fed. Bank** | $25,520.20 |

** (purchased with funds from Innoquest Project Account)

Each separate mailing described above constituting a separate count of this indictment, all in violation of Title 18, United States Code, section 1341, and Title 18, United States Code, section 2.

### COUNTS 36 - 50
### (18 USC § 1341)

**D-2   CHRISTOPHER GRISEL**

From on or about February 27, 1995 through March 1, 1995, or thereabouts, on or about the individual dates set forth below, in the Eastern District of Michigan, Northern Division, **CHRISTOPHER GRISEL**, defendant herein, having devised and intending to devise a scheme or artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations or promises, for the purpose of executing such scheme or artifice or attempting to do so did place or cause to be placed in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, and did deposit or cause to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or take or receive therefrom, any such matter or thing, or

38

knowingly caused to be delivered by mail or such carrier according to the direction

thereon, or at the place to whom it is addressed, any such matter or thing, to-wit: IQ

Marketing & Management, LLC checks totaling $54,291.01, or thereabouts, to the

individuals and entities set forth below, each such instance constituting a separate

count of this indictment.

### The Manner and Means of the Scheme and Artifice to Defraud

A.    Defendant, Christopher Grisel, at all times pertinent to this

indictment, was a co-owner with Alan Mikell of Earthsafe Enterprises, an Oklahoma

corporation.  Christopher Grisel also controlled IQ Marketing & Management, a Texas

limited liability company, and Innoquest, Inc., a Texas corporation.

B.    At all times pertinent to this indictment, Earthsafe Enterprises

owned the majority of stock in Paul's Pinconning Cheese, in Pinconning, Michigan.

C.    At all times pertinent to this indictment, David J. and Eláine Wilcox,

God's Handiwork, Elroy and Dorothy Gilmore, Rita Simmons, Eugene Gosdzinski,

Geraldine Leavine, Zimba Dairy, and Ernest Eller, sold milk to Paul's Pinconning

Cheese (PPC), with the agreement that PPC would pay them for their milk on the first

and fifteenth of each month.  The payment on the first would be reimbursement for the

first fifteen days of the previous month's milk.  The payment on the 15th would be

reimbursement for the remainder of the previous month.  Lupp Transport and John

Haley transported milk from the farmers to Paul's Pinconning Cheese.  In addition,

Lupp transported whey protein concentrate from Paul's to various consumers of the

product.

D.     It was part of the scheme and artifice to defraud that in late February, 1995, Christopher Grisel instructed Innoquest employee, Benjamin Grisel, to write IQ Marketing & Management, LLC checks dated on or about March 1, 1995, from account #339-4012227 at Guaranty Federal Bank in Texas, to the individuals and entities set forth below, for milk delivered to Paul's Pinconning Cheese in Pinconning, Michigan and/or for services rendered and/or goods delivered, with full knowledge that the IQ Marketing & Management LLC account then had insufficient funds to cover these checks.

E.     It was a further part of the scheme and artifice to defraud that in late February of 1995, Christopher Grisel instructed Benjamin Grisel to deliver these checks, along with other checks to milk suppliers and others, to Federal Express or another private or commercial interstate carrier in Texas for overnight delivery to Paul's Pinconning Cheese for subsequent delivery to the payees referred to above.

F.     On or about February 27, 1995, IQ Marketing & Management, LLC, account number 339-4012227 at Guaranty Federal Bank in Texas, had a balance of approximately $10,799.92. On that same day, however, $10,000 was transferred from that account to Innoquest, Inc., leaving a balance of approximately $799.92. On February 28, 1995, an IQ Marketing & Management check was issued for $676.92, together with a service charge, leaving a balance of $88.00. On or about March 6, 1995, this account was closed and on or about the next day, March 7, 1995, a new IQ Marketing & Management account was opened at Guaranty Federal Bank (Account # 339-4012854). Subsequent monies received on behalf of IQ Marketing & Management

40

were then placed in that new account. On or about March 10, 1995, $230,000 in the form of a single cashier's check from Frank Vandersloot was deposited into the new IQ Marketing & Management account at Guaranty Federal Bank. Of the $230,000 thus deposited, approximately $115,000 was then transferred to Innoquest, Inc. The remaining $115,000 was transferred to or on behalf of "Joe Grisel".

        G.    In furtherance of the above-described scheme and artifice to defraud, Christopher Grisel, defendant herein, caused the below-listed no account or NSF checks to be sent or delivered by a private or commercial interstate carrier, to-wit: Federal Express, on or about February 27, 1995, from Texas to Pinconning, Michigan, for subsequent delivery by the U.S. Postal Service to the named payees set forth below:

| Count | Mailing - U.S. Mail Date (on or about) | Name | IQ Marketing & Mgmt. Check Amount (approx) |
|-------|-----------------------------------------|------|---------------------------------------------|
| 36 | 03/01/95 | Eugene Gosdzinski | $3,032.33 |
| 37 | 03/01/95 | Geraldine Leavine | $4,447.67 |
| 38 | 03/01/95 | Zimba Dairy | $10,501.74 |
| 39 | 03/01/95 | Zimba Dairy | $11,333.41 |
| 40 | 03/01/95 | Ernest Eller | $2,128.80 |
| 41 | 03/01/95 | Ernest Eller | $339.95 |
| 42 | 03/01/95 | David and Elaine Wilcox | $7,300.87 |
| 43 | 03/01/95 | God's Handiwork | $5,390.27 |
| 44 | 03/01/95 | Elroy or Dorothy Gilmore | $2,233.33 |

| Count | Mailing - U.S. Mail Date (on or about) | Name | IQ Marketing & Mgmt. Check Amount (approx) |
|-------|------|------|------|
| 45 | 03/01/95 | Elroy or Dorothy Gilmore | $1,114.68 |
| 46 | 03/01/95 | John Haley | $4,514.34 |
| 47 | 03/01/95 | John Haley | $ 114.26 |
| 48 | 03/01/95 | Lupp Transport, Inc. | $ 643.15 |
| 49 | 03/01/95 | Lupp Transport, Inc. | $ 590.91 |
| 50 | 03/01/95 | Rita Simmons | $ 605.30 |
| | Total | | $54,291.01 |

Each such individual instance constituting a separate count of this indictment, all in violation of Title 18, United States Code, section 1341.

## COUNT 51
### (18 USC § 1343 and 18 USC 2)

D-1   **ALAN MIKELL**
D-2   **CHRISTOPHER GRISEL**

On or about March 7 through 31, 1995, inclusive, in the Eastern District of Michigan, Northern Division, and elsewhere, **ALAN MIKELL and CHRISTOPHER GRISEL,** defendants herein, having devised and having intended to devise a scheme and artifice to defraud, and for obtaining property and money by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted, and did aid and abet each other in transmitting or causing to be transmitted, by means of wire communications in interstate commerce, various writings, signs, signals, pictures, or sounds, for the purpose of executing a scheme and artifice

42

to defraud.

### The Manner and Means of the Scheme and Artifice to Defraud

A.       Paragraphs 1 through 5, inclusive, and the list of overt acts set forth in Count 1 of this indictment, are re-alleged and re-stated as if fully set forth herein.

B.       In approximately October of 1994, Blair Dance, RMP Operating Co., Inc., and Earthsafe Enterprises, Inc. (Mikell) entered into an agreement whereby a loan of $350,000 was made by Blair Dance, and a loan of $500,000 was made from RMP Operating Co., Inc. to Earthsafe Enterprises, Inc. At all times leading up to the lending of the $350,000 by Blair Dance and the group of investors Dance was working with, (The Dance Group) Blair Dance was given to understand by Alan Mikell and Christopher Grisel that the monies they had loaned were secured by the inventory and accounts receivable at the Pinconning plant.

C.       On or about March 6, 1995, unbeknownst to Dance, Earthsafe sold a disposal well which was on the plant premises to PPC. Thereafter, and throughout the month of March, 1995, Dance made repeated inquiries by telephone from Texas to Michigan, Oklahoma, and to North Richland Hills, Texas, inquiring of both Mikell and Christopher Grisel about receipt of interest payments as well as the return of his (Dance's) investment of $75,000.00. Alan Mikell and Christopher Grisel repeatedly told Dance during these interstate telephone communication that his investment was still secure, and that managerial efforts were under way by Christopher Grisel and/or Alan Mikell which would assure the continued security of his investment.

43

D.    In truth and fact, as the defendants then well knew, they had sold a disposal well on the plant premises on or about March 6, 1995 and had arranged the transaction such that Earthsafe claimed a security interest which took priority over that of Dance, The Dance Group, RMP, etc., and whereby Earthsafe assumed control of the accounts receivable and inventory of PPC.

All in violation of Title 18, United States Code, section 1343, and Title 18, United States Code, section 2.

### COUNT 52
### (18 U.S.C. § 982)

**D-1    ALAN MIKELL**
**D-2    CHRISTOPHER GRISEL**

1.    The allegations contained in counts 1, 16-21, 29, and 30-31, inclusive of this indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, section 982 (money laundering).

2.    As a result of the enumerated offenses in violation of Title 18, United States Code, section 1956, **Alan Mikell and Christopher Grisel** shall forfeit to the United States any property, real or personal, involved in such offenses, or any property traceable to such property.

3.    Property subject to forfeiture to the United States pursuant to Title 18, United States Code, section 982 includes, but is not limited to the following:

a.    Innoquest, Inc. project account number 339-4014322 and Innoquest, Inc. operating account number 339-4012201, Guaranty Federal Bank, FSB, Hurst, Texas;

44

  b.  IQ Marketing and Management, LLC account number 339-4012227 and IQ Marketing and Management, LLC account number 339-4012854, Guaranty Federal Bank, FSB, Hurst, Texas;

  c.  Earthsafe Enterprises, Inc. and/or Mikco Operating account numbers 6364046 and 8024044, Liberty Bank, Tulsa, Oklahoma;

  d.  Earthsafe Enterprises, Inc. checking account number 103900010, Liberty Bank, Tulsa, Oklahoma;

  e.  Tidemark Exploration, Inc. account number 3274040, Liberty Bank, Tulsa, Oklahoma;

 4.  If any of the property described above is being subject to forfeiture as a result of the act or omission of defendants **Alan Mikell and Christopher Grisel**:

  a.  Cannot be located upon the exercise of due diligence;

  b.  has been transferred or sold to, or deposited with, a third party;

  c.  has been placed beyond the jurisdiction of the court;

  d.  has been substantially diminished in value; or

  e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, section 982(b) to seek to forfeit any other property of the defendants up to the value of the

property listed above.

All in violation of Title 18, United States Code, section 982.

Dated: May 27, 1998

THIS IS A TRUE BILL

_Thomas A. Lure_
Foreperson

SAUL A. GREEN
United States Attorney

By: _____
James A. Brunson (P28403)
Assistant U.S. Attorney
P.O. Box 217
Bay City, Michigan  48707
(517) 895-5712

46